FILED

APR 0 5 2013

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| JOEL ALFRED ST. GERMAIN, | ) | CV 12-108-M-DLC-JCL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| MIKE FERRITER, Director, | ) | |
| Montana Department of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

United States Magistrate Judge Jeremiah Lynch issued Findings and Recommendations recommending denial of Petitioner Joel St. Germain's petition seeking a writ of habeas corpus under 22 U.S.C. § 2254. (Doc. 12.) St. Germain timely filed objections and is therefore entitled to de novo review of the specified findings and recommendations to which he objects. 28 U.S.C. § 636(b)(1). The portions of the Findings and Recommendations not specifically objected to will be reviewed for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Because the parties are familiar with the procedural and factual background of this case, it will be restated here only as needed

1

to provide context.

St. Germain was convicted of four counts of incest and four counts of sexual intercourse without consent in 2004 and sentenced to 100 years with 25 years suspended on each count to run concurrently. St. Germain's convictions arise from years of sexual abuse of his stepdaughter, H. St. Germain filed a federal habeas petition in June 2012 alleging his trial counsel provided ineffective assistance at trial.

St. Germain, through counsel, argues Judge Lynch erred by finding his trial counsel's performance was not prejudicially ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). St. Germain argues the prejudice standard employed by Judge Lynch was not compliant with *Strickland* because he ignored the testimony contradictory to the victim and took the victim's testimony as true. Judge Lynch correctly determined St. Germain must demonstrate that his counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability the result of the trial would have been different but for counsel's errors. *Strickland*, 466 U.S. at 694. Judge Lynch recognized that a reasonable probability is less than a preponderance of the evidence standard, but still found that St. Germain did not point to any evidence that could have changed the jury's guilty verdict. Judge Lynch did not ignore the testimony contradictory to H as St. Germain argues. Judge Lynch thoroughly analyzed St. Germain's testimony from

his trial, the testimony of H's principal, the testimony of H's friend and roommate L., and the testimony of Jason Yorton who was an acquaintance of H and St. Germain. All of this testimony supported H's testimony regarding St. Germain's obsession with H's sexuality and his need to maintain absolute control over her. Judge Lynch was not required to inventory all the evidence supporting St. Germain's case in chief at his trial. Appropriately, he identified the overwhelming evidence supporting the jury's guilty verdict even considering the effects of defense counsel's errors at trial. Judge Lynch did not make any findings regarding H's credibility, so St. Germain's objection that Judge Lynch accepted H's testimony as true and ignored the evidence contrary to H's testimony is unfounded.

St. Germain also objects to Judge Lynch's finding that defense counsel's disclosure of her investigative notes to the prosecution did not render the trial proceedings unreliable. Judge Lynch assumed defense counsel's conduct was unreasonable under *Strickland* and assumed the prosecution would not have called Ron Hale as a witness apart from the improper disclosure. Judge Lynch determined that, although Hale's testimony painted an unfavorable picture of St. Germain "as a man exerting and displaying total control over his stepdaughter," other evidence against St. Germain "painted that picture vividly and completely." (Doc. 12 at 18.) Because Hale's testimony was corroborated by several other trial witnesses, there is

not a reasonable probability that the outcome of the trial would have been different but for his testimony. St. Germain is correct that Hale's statement that St. Germain told him he had a test done on H. to confirm her virginity was damaging to St. Germain's case. However, a plethora of testimony from L., H., Yorton, H's principal, and even St. Germain himself was just as damaging on the subject of the inappropriate relationship between St. Germain and H. Judge Lynch correctly found that Hale's testimony did not violate the second element of the *Strickland* test.

St. Germain objects that Judge Lynch erred by not considering Dr. Thomas Bennett's testimony and by questioning Dr. Bennett's credentials. Judge Lynch found that the State's expert, Dr. Karen Mielke, provided testimony consistent with H.'s but did not prove H.'s testimony was true. Because this medical evidence did not prove the State's case, Judge Lynch found that defense counsel's failure to present an opposing expert was not unreasonable. Judge Lynch noted that St. Germain failed to submit any testimony of Dr. Bennett to this Court and the State has not been permitted to cross examine him. Judge Lynch concluded that the facts St. Germain alleged were not sufficient to show Dr. Bennett would have been qualified to testify at trial because he is a pathologist and did not review the video of H.'s examination.

St. Germain argues Judge Lynch failed to properly review Dr. Bennett's

testimony or distinguish his claims from those in *Gersten v. Senkowski*, 426 F.3d 588 (2nd Cir. 2005). St. Germain included a deposition of Dr. Bennett from February 2009 with his objections to the findings and recommendations. St. Germain did not include Dr. Bennett's deposition with his habeas petition, which is why Judge Lynch found the State had no opportunity to cross-examine Dr. Bennett and his claim lacked supporting evidence. "A district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation," but it "must actually exercise its discretion, rather than summarily accepting or denying the motion." *U.S. v. Howell*, 231 F.3d 615, 621–622 (9th Cir. 2000). The Court will consider Dr. Bennett's deposition because, as St. Germain points out, the issue of failing to provide expert testimony can be determinative in a habeas petition. It is not, however, in this case.

In analyzing defense counsel's decision not to call a medical expert, the Court "must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. To the extent possible, the Court "eliminate[s] the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." *Id.* at 689. The Court is further mindful that "a defense argument that the

prosecution has not proved its case is sometimes better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Harrington v. Richter*, 131 S.Ct. 770, 789 (2011).

Dr. Mielke's testimony for the State neither proved nor disproved H.'s abuse allegations. Dr. Mielke testified that H.'s hymen scarring could have occurred anytime prior to the two weeks before trial, and that her anal examination was normal. Dr. Mielke testified that H.'s normal anal examination was nonetheless consistent with chronic anal sexual abuse. Defense counsel challenged Mielke's testimony as biased due to her advocacy for sexual abuse victims, and elicited testimony that H.'s scarring could have been caused by consensual intercourse. Counsel did not employ a medical expert to challenge Mielke or H.'s testimony in part based on counsel's pretrial consultations with the nurse practitioner who performed H.'s exam who informed her the physical results were insignificant or inconclusive.

Dr. Bennett, a board-certified and highly qualified pathologist, disagreed with many of Dr. Mielke's findings in his deposition. The most meaningful disagreements were regarding the hymen scarring and normal anal examination findings. Dr. Bennett stated that the hymen would have disappeared if H. was subjected to repeated vaginal penetration. However, he also opined that the scarring present could have arisen from either forced or consensual intercourse, a point defense counsel argued at

trial. Dr. Bennett testified that repeated anal penetration would likely have caused vaginalization of H.'s anus. However, he also agreed that most anal examinations of chronic sexual abuse victims have normal results and that "[o]nly 20% of known penetration injuries in pre-pubital girls with anal penetration actually show up physical evidence." (Doc. 13-1 at 20.) Thus, although Dr. Bennett's expert opinions do refute some aspects of Dr. Mielke's trial testimony, the essence of his testimony is that H.'s examination results were inconclusive as evidence of sexual abuse.

This case is distinguished from *Gersten* because the expert's testimony in that case supported the victim's abuse allegations. Here, Dr. Mielke testified that the physical evidence could have been consistent with consensual intercourse and the anal examination was neither consistent nor inconsistent with chronic sexual abuse. Dr. Bennett agreed with Dr. Mielke on these two key issues. It was a reasonable strategic decision for defense counsel not to spend considerable time and effort searching for a medical expert when the State's expert testimony was not significantly favorable to the prosecution or unfavorable to St. Germain. As the United States Supreme Court has pointed out, "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 131 S. Ct. at 791. Similar to defense counsel in *Harrington*, St. Germain's counsel determined a medical expert was not necessary

after consulting with H.'s examining medical professional and reviewing Dr. Mielke's report. Thus, counsel here, unlike defense counsel in *Gersten*, did investigate whether a medical expert would be beneficial, and concluded it would not. St. Germain's counsel performed a competent cross-examination of Dr. Mielke and established that the physical evidence could be consistent with consensual sexual intercourse–an important concession with which Dr. Bennett concurs. Analyzing counsel's decisions and trial performance from counsel's perspective at the time of trial, her representation was not ineffective assistance of counsel on this issue. Even considering Dr. Bennett's deposition, the Court agrees with Judge Lynch's determination that this claim does not meet either element of the *Strickland* test.

Lastly, St. Germain challenges Judge Lynch's finding that defense counsel was not ineffective for failing to attempt to pierce Montana's rape shield law regarding H.'s alleged prior false accusation of sexual abuse against her biological father. The Montana Supreme Court has held that "evidence of similar sexual offenses claimed to have been committed against the victim by other individuals is admissible *if the offenses were proven or admitted to be false.*" State v. Anderson, 686 P.2d 193, 200 (Mont. 1984). "[E]vidence of prior charges which have not been adjudicated to be true or false; i.e., which may be true or false is also inadmissible, primarily because its introduction circumvents the interest in preserving the integrity of the trial and

preventing it from becoming a trial of the victim." *Id.* The evidence St. Germain refers to regarding this claim is a psychologist's note from 1993 stating H. "reported to a nurse at Western Montana Clinic that her father might have molested her in her sleep. After interviewing H.M. very carefully on this subject, I do not believe she was sexually abused by her father." (Doc. 2-1 at 1.) This evidence is not sufficient to pierce the rape shield law, or even to warrant a hearing and examination of H. on the subject. The letter is from 1993, there is no evidence of any investigation into the report or charges filed, and no evidence that the accusation was proven false apart from the psychologist's opinion that H. was not molested. Defense counsel was not ineffective in failing to attempt to pierce the rape shield law at trial based on this scant hearsay evidence. Judge Lynch correctly determined that the record contains insufficient evidence to prove the accusation was false which is necessary to justify further investigation.

After a review of Judge Lynch's remaining findings and recommendations, I find no clear error. Accordingly,

IT IS HEREBY ORDERED that Judge Lynch's Findings and Recommendations (doc. 12) are adopted in full. St. Germain's petition (doc. 1) is DENIED. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against St. Germain. A certificate of appealability is

9

DENIED because St. Germain's claims lack merit.

DATED this 5th day of April, 2013.

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court